**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12 cv 6675 |
| | ) | |
| v. | ) | Hon. John Z. Lee |
| | ) | |
| JOHN DOES 1-68, | ) | Magistrate Judge Susan Cox |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12 cv 6677 |
| | ) | |
| v. | ) | Hon. John Z. Lee |
| | ) | |
| JOHN DOES 1-42, | ) | Magistrate Judge Michael Mason |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

These two cases pending before the Court are part of a swarm of internet copyright infringement cases filed in this district and in districts throughout the country. In a typical case, the plaintiff is usually the owner of a copyright in a television show or movie and claims that the defendants have downloaded the show or movie from the internet without authorization using a computer protocol known as "BitTorrent." Because the plaintiff only knows the internet protocol ("IP") addresses of the alleged infringers at the time that the case is filed, the plaintiff lists the defendants as "John Does" and seeks leave to obtain pre-answer discovery from the defendants' various internet service providers ("ISPs") to determine the defendants' individual

identities. Once the identities become known to the plaintiff, the John Does are served with process. The defendants then either settle with the plaintiffs, default, or contest the suit.

Those defendants who elect to contest the suit often will (a) move to quash the subpoena to the ISP; (b) move to sever the John Doe defendants from one another; and/or (c) move for leave to proceed anonymously in order to protect their privacy, particularly in those cases involving pornographic media. While numerous district court judges have ruled on such motions, these disputes have yet to percolate up to the Seventh Circuit, leaving each district court to plot its own course in handling this influx of litigation.

Pending before the Court are the following motions:

**Case No. 12-cv-6675:**

1. Motions by Defendant "John Doe X" to sever and quash[1] (Dkt. 36, 37); and

2. Motion by Plaintiff to compel "John Doe X's" attorney to disclose representation (Dkt. 53).

**Case No. 12-cv-6677:**

1. Motions by Defendant John Doe 38 to quash; for leave to proceed anonymously; and to sever (Dkt. 18); and

2. Motions by Defendant John Doe 29 to quash; for leave to proceed anonymously; and to sever (Dkt. 20, 22).

Because the allegations in the complaints and the motions filed in the two cases are substantially similar (except for the movie at issue), the Court considers them together for the purposes of this Memorandum Opinion and Order.

---

[1] Defendant John Does 11, 32, and 46 also filed substantially similar motions to quash, sever, and for leave to proceed anonymously. However, because those Does were voluntarily dismissed from the lawsuit, those motions were stricken as moot. (Dkt. 85.)

## Background

The instant cases arise out of the use by individuals of the so-called BitTorrent protocol to download music or movies. BitTorrent uses a "peer-to-peer" sharing protocol, whereby users are able to download large amounts of data from other users. (12-cv-6675 Compl. ¶ 14; 12-cv-6677 Compl. ¶ 14.) Where BitTorrent differs from other methods of downloading media files is that, instead of downloading an entire file from a single "host" computer, a user becomes part of a "swarm" of computers and downloads discrete pieces of a single work from other computers within the same swarm; these pieces are then sewn together into a single, complete work by the user's computer.[2] While the user is downloading blocks from other computers in the swarm, the user is simultaneously uploading blocks of the same work from the user's computer for the benefit of other users in the swarm. (12-cv-6675 Compl. ¶ 15; 12-cv-6677 Compl. ¶ 15.)

The individual who initially uploads the entire file to the torrent site is known as a "seeder." (12-cv-6675 Compl. ¶ 19; 12-cv-6677 Compl. ¶ 19.) Once the work is uploaded, BitTorrent essentially disseminates blocks of the work to separate individuals, who wish to download the work, known as "peers" or "leechers." (12-cv-6675 Compl. ¶¶ 19, 22, 25; 12-cv-6677 Compl. ¶¶ 19, 22, 25.)[3] Once a peer receives its piece of the file, it transmits what it has downloaded to other peers, who are simultaneously downloading and uploading blocks from other peers. (12-cv-6675 Compl. ¶¶ 28-32; 12-cv-6677 Compl. ¶¶ 28-32.) The combination of the peers and seeders is what is referred to as a "swarm." (12-cv-6675 Compl. ¶ 32; 12-cv-6677 Compl. ¶ 32.)

---

[2] These pieces of data are commonly referred to as "blocks." Patience Ren, Note, *The Fate of Bittorent John Does: A Civil Procedure Analysis of Copyright Litigation*, 64 Hastings L.J. 1343, 1352 (2013).

[3] Put another way, "[a] peer in a torrent that has a complete file is called a 'seed' while a peer that is in the process of acquiring a file is a 'leecher.'" *Id.* at 1353.

In Case No. 12-cv-6675, Plaintiff alleges that the Defendants illegally downloaded and disseminated via BitTorrent a motion picture entitled "Happy Couple," the copyright to which Plaintiff owns. (12-cv-6675 Compl. ¶¶ 11, 46-49.) In Case No. 12-cv-6677, Plaintiff alleges that the Defendants illegally downloaded and disseminated via BitTorrent a motion picture entitled "Backstage," another work copyrighted by Plaintiff. (12-cv-6677 Compl. ¶¶ 11, 46-49.)

Plaintiff bases its allegations on the results of an investigation it conducted using forensic software to identify the transactions and IP addresses associated with the downloading and sharing of the files. (12-cv-6675 Compl. ¶¶ 36-42; 12-cv-6677 Compl. ¶¶ 36-42.) A list of the IP addresses identified in this manner is attached as Exhibit A to each complaint. The lists expressly indicate that the computers of the John Does accessed the same piece of the copyrighted work, and each piece is identified by a unique value known as a "Hash Identifier" or "Hash Number." (12-cv-6675 Compl. ¶¶ 21, 36-42; 12-cv-6677 Compl. ¶¶ 21, 36-42.)

As Plaintiff explains, the hash number is a "random and unique alphanumeric identifier" tied to a piece of the copyrighted work that acts "like an electronic fingerprint to identify the source and origin of the piece." (12-cv-6675 Compl. ¶¶ 21-22; 12-cv-6677 Compl. ¶¶ 21-22.) In the first case, the Hash Number is "3C80887ED171F1D026BCA9014151A9A831BDC7A7." (12-cv-6675 Compl. ¶ 38.) In the second case, the Hash Number is "8342201A3C44277E7753BBCB2EFDA014EBEF84A4." (12-cv-6677 Compl. ¶ 38.)

Armed with the IP addresses uncovered by its investigation, Plaintiff asked the Court to issue a subpoena to the Defendants' Internet Service Providers ("ISP") in order to discover the identities of the John Does associated with those addresses. The Court granted Plaintiff's motion on October 2, 2012, but limited the information to be provided. (12-cv-6675 Dkt. 13; 12-cv-6677 Dkt. 12.)

4

Certain of the Defendants in each case have now filed motions with the Court seeking (a) to sever all John Does from the action save for the lowest-numbered Defendant; (b) to quash the subpoena issued to the ISPs (essentially, for the Court to reconsider its prior order granting Plaintiff leave to conduct expedited discovery); and (c) to proceed anonymously in this action (at least through the conclusion of discovery and dispositive motions). Each issue will be discussed in turn.

## Discussion

### I. The John Doe Defendants' Motions To Sever For Improper Joinder

The moving John Does collectively argue that they are improperly joined in these actions and that the Court should sever all Defendants save for the first named Defendant in each action. In Case No. 12-cv-6675, John Does 2, 11, 15, 18, 20, 26, 29, 32, 33, 44, 45, 46, 55, 61, 62, 63, 64, 65, 66, 67, and 68 have all been voluntarily dismissed, and hence John Doe 1 alone would remain if the Court grants the motion to sever. In Case No. 12-cv-6677, where all John Does have been voluntarily dismissed other than the movants, John Doe 29 would remain as the Defendant, and John Doe 38 would be severed, if their motions are granted.

Fed. R. Civ. P. 20 provides that joinder of two or more defendants is appropriate if the claims asserted against the defendants are made "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and where there is at least one "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2). In addition to the factors set out in Rule 20, a court may consider "other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness." *Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001) (internal citations omitted).

The party asserting joinder bears the burden of establishing its appropriateness, *see Turley v. Gaetz*, 625 F.3d 1005, 1011 (7th Cir. 2010), and a district court has broad discretion in deciding motions to sever. *Chavez*, 251 F.3d at 632 (internal citations omitted). Finally, if a court concludes that a party or parties have been misjoined, it may sever parties from an action pursuant to Fed. R. Civ. P. 21 and 42(b).

The so-called BitTorrent infringement cases have spawned numerous district court opinions across the country with varying results. Some have permitted plaintiffs to join numerous defendants in a single action; others have not. After a review of these cases, the Court believes that the better approach is to preclude joinder in those cases where the plaintiff has failed to assert that all of the defendants participated in the same swarm at roughly the same time. Judge Virginia M. Kendall's recent opinion in the case of *Malibu Media, LLC v. Reynolds*, No. 12 C 6672, 2013 WL 870618, at *10 (N.D. Ill. Mar. 7, 2013), contains a thorough discussion of the recent cases on this point. As Judge Kendall explains, these cases generally hold that participation in a common swarm is a necessary but insufficient condition to establishing grounds for joinder. In addition to showing that the defendants participated in the same swarm, a plaintiff also must show that the defendants were part of the same swarm *at the same time*. *Id.* (citing *Sunlust Pictures, LLC v. Does 1-75,* No. 12 C 1546, 2012 WL 3717768, at *4 (N.D. Ill. Aug. 27, 2012) (Tharp, J.); *Digital Sins, Inc. v. Does 1-245,* No. 11-8170, 2012 WL 1744838, *2 (S.D.N.Y. May 15, 2012); *In re BitTorrent Adult Film Copyright Infringement Cases,* No. 11-3995, 2012 WL 1570765, *11 (E.D.N.Y. May 1, 2012); *SBO Pictures, Inc. v. Does 1-57,* No. 12-22, 2012 WL 1415523, at *2 (D. Md. Apr. 20, 2012); *Cinetel Films, Inc. v. Does 1-1,052,* No. JFM 8:11-cv-02438, 2012 WL 1142272, at *6 (D. Md. Apr. 4, 2012); *Third Degree Films, Inc. v. Does 1-131,* 280 F.R.D. 493, 496-97 (D. Ariz. 2012); *Raw Films, Ltd. v. Does 1-32,* No. 1:11-

CV-2939-TWT, 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011); *Liberty Media Holdings, LLC v. BitTorrent Swarm,* 277 F.R.D. 669, 671-72 (S.D. Fla. 2011); *On The Cheap, LLC v. Does 1-5011,* 280 F.R.D. 500, 502 (N.D. Cal. 2011); *MCGIP, LLC v. Does 1-149,* No. 11–2331, 2011 WL 4352110, at *3 (N.D. Cal. Sept. 16, 2011); *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011); *Boy Racer, Inc. v. Does 1-60,* No. 11-1738, 2011 WL 3652521, at *4 (N.D. Cal. Aug. 19, 2011); and *CP Prods., Inc. v. Does 1-300,* No. 10 C 6255, 2011 WL 737761, at *1 n.2 (N.D. Ill. Feb. 24, 2011) (Shadur, J.)). *But see TCYK, LLC v. Does 1-87*, No. 13 C 3845, 2013 WL 3465186, at *3 (N.D. Ill. Jul. 10, 2013) (Tharp, J.); *Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 195 n.11 (D. Mass. 2012); *Third Degree Films v. Does 1-36*, No. 11 C 15200, 2012 WL 2522151, at *9 (E.D. Mich. May 29, 2012).

Here, Malibu Media has failed to offer any allegations from which the Court could find that the John Doe Defendants participated in the same swarm at roughly the same time in order to illegally download and exchange file blocks with one another. For example, in both cases, the John Doe defendants are all alleged to have "copied a piece of Plaintiff's copyrighted Work identified by the Unique Hash Number." (12-cv-6675 Compl. ¶ 38; 12-cv-6677 Compl. ¶ 38.) Plaintiff claims this fact establishes that "each Defendant was part of the same series of transactions." (12-cv-6675 Compl. ¶ 39; 12-cv-6677 Compl. ¶ 39.) But this is not necessarily the case. The fact that each Defendant is alleged to have downloaded the same file associated with the hash numbers demonstrates only that they all downloaded the same *piece* of a file at some point during the swarm's existence. It does not establish that the Defendants were all part of the swarm when they shared parts of the copyrighted work with one another. "Just because each user has the same file with the same digital fingerprint (info hash), it is not necessarily true

7

that they participated in a single swarm." *Voltage Pictures, LLC v. Does 1-31*, No. CV413-037, 2013 WL 2181666, at *5 (S.D. Ga. May 20, 2013).

*Voltage Pictures* is instructive. There, the court rejected the argument that the Defendants should be joined because they accessed the same file (as identified by the same hash number). Such a test would led to "unworkable" results, including the potential joinder of "hundreds or thousands of people using *any* means of transmission over a period of *years*, despite their own involvement being inconsequential to the piracy swarm in general, and regardless of the fact that they likely never directly transacted the file to anyone else named in the complaint." *Id.* Because the plaintiff could not allege that "each defendant: (a) participated in a common swarm at the same time as each other defendant; and (b) *actually* exchanged a piece of copyrighted material with another," the court found joinder to be improper. *Id.* at *7; *see In re BitTorrent*, 2012 WL 1570765, at *11 ("[m]uch of the BitTorrent protocol operates invisibly to the user—after downloading a file, subsequent uploading takes place automatically if the user fails to close the program. . . . '[t]he bare fact that Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world.'") (quoting *Hard Drive Prods.*, 809 F. Supp. 2d at 1163); *SBO Pictures,* 2012 WL 1415523, at *2 ("better-reasoned decisions have held that where a plaintiff has not plead that any defendant shared file pieces directly with one another, the first prong of permissive joinder is not satisfied."); *Hard Drive Prods*., 809 F. Supp. 2d at 1163 ("Under the BitTorrent Protocol, it is not necessary that each of the Does 1-188 participated in or contributed to the downloading of each other's copies of the work at issue – or even participated in or contributed to the downloading by any of the Does 1-188.").

Here, Plaintiff has not alleged that all of the Defendants in either case participated in the swarm at the same time so as to allow them to share copyrighted files with one another. This is particularly true given that a swarm could conceivably last for weeks, and a typical peer would only have participated in the swarm for a fraction of that time.[4] Consequently, Plaintiff has not met its burden to show that their right to relief arose from "the same transaction, occurrence, or series of transactions or occurrences," and severance is appropriate in both cases.

This principle is aptly demonstrated in Case No. 12-cv-6677, where only John Doe 29 and 38 remain. As the records appended to the complaint indicate, John Doe 29 accessed the specific piece of the file via BitTorrent on July 23, 2012 at 9:44 a.m., while John Doe 38 did so on August 9, 2012 at 1:32 a.m. Even assuming that John Doe 29 remained part of the swarm for a certain period of time after finishing the download, it strains credulity to believe that John Doe 29 was still part of the swarm seventeen days later when John Doe 38 joined. *See In re BitTorrent*, 2012 WL 1570765, at *11 (where dates of downloading were weeks apart, "the assertion that defendants were acting in concert rests upon a thin reed"); *see also Raw Films*, 2011 WL 6840590, at *2 ("differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert").

Additionally, with respect to Case No. 12-cv-6675, the presence of forty-seven remaining individual John Does raises significant fairness and manageability concerns. The court neatly summarized these concerns in *Third Degree Films*:

---

[4] Indeed, "[i]t is not guaranteed . . . that every member of a BitTorrent swarm will interact with every other member within that swarm." Gregory S. Mortenson, Comment, *BitTorrent Copyright Trolling: A Pragmatic Proposal for a Systemic Problem*, 43 Seton Hall L. Rev. 1105, 1123-24 (2013). In fact, "[a]n individual device cannot . . . connect to all peers in each swarm subset at the same time. Each peer is allowed to share with only a fixed number (usually four) of other peers at a given time." Jason R. LaFond, *Personal Jurisdiction and Joinder in Mass Copyright Troll Litigation*, 71 Md. L. Rev. Endnotes 51, 54 (2012).

> Each Defendant may have different factual and legal defenses, and would then file completely unrelated motions that the Court would have to resolve within the context of one case. . . . Further, scheduling and conducting hearings and discovery disputes among . . . parties would be almost impossible. Additionally, during discovery, each Defendant, who might appear pro se and not be an e-filer, would be forced to serve paper copies of all filings on all other parties, and would have the right to be present at all other parties' depositions, all of which would be a significant burden on each Defendant litigant. Also, because of the potential prejudice to each unrelated Defendant, the Court likely would not undertake to conduct a trial for all . . . Defendants at the same time. Thus, the Court would effectively sever these cases for trial, and conduct over a hundred separate trials with different witnesses and evidence, eviscerating any "efficiency" of joinder. Finally, all of these issues would certainly needlessly delay the ultimate resolution of any particular Defendant's case, which again weighs against efficiency and the opportunity for the Defendant to receive a prompt resolution of his or her case.

*Third Degree Films*, 280 F.R.D. at 498-99. *See also Reynolds*, 2013 WL 870618, at *15; *Pac. Century Int'l, Ltd. v. Does 1-101*, No. C-11-02533, 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011) (severing Does 2-101 from internet copyright infringement case because joinder would "prove a logistical nightmare"). In contrast, the principal efficiency that permitting joinder would provide is that Plaintiff can avoid paying the necessary filing fees that it would have to pay, if it were forced to sue each Defendant individually. This is insufficient to justify joinder. *See Reynolds*, 2013 WL 870618, at *15; *Digital Sins*, 2012 WL 1744838, at *2 ("the desire to avoid paying statutorily mandated filing fees affords no bases for joinder"); *In re BitTorrent*, 2012 WL 1570765, at *12 (fundamental fairness principles would be violated if permissive joinder in four consolidated cases allowed).

To summarize, the Court orders as follows:

**As to Case No. 12-cv-6675:**

1. "John Doe X's" motion to sever pursuant to Fed. R. Civ. P. 21 (Dkt. 36) is granted; but the motion to quash subpoena pursuant to Fed. R. Civ. P. 45 (Dkt. 37) is moot because John Doe X will be severed from this action; and

2. Plaintiff's motion to compel "John Doe X's" attorney to disclose representation (Dkt. 53) is moot because John Doe X will be severed from this action.[5]

**As to Case No. 12-cv-6677:**

1. John Doe 38's motion to quash, for leave to proceed anonymously, and to sever (Dkt. 18) is granted only as to the request for severance; the remaining motions are denied as moot because John Doe 38 will be severed from this action; and

2. John Doe 29's motion to sever (Dkt. 20, 22) is denied as moot given the Court's ruling on John Doe 38's motion for severance; because John Doe 29 is now the sole remaining defendant in the case, John Doe 29's motions for leave to quash and, alternatively, to proceed anonymously, are addressed below.

## II. John Doe 29's Motion To Quash Subpoena

John Doe 29 also asks the Court to quash the subpoena issued by Plaintiff to his ISP. Fed. R. Civ. P. 45 allows a party to issue a subpoena for documents and other things in the custody or control of a non-party. It also sets forth criteria pursuant to which a subpoena can be quashed. In deciding a motion to quash, the court must ask whether the subpoena either (i) fails to allow a reasonable time to comply; (ii) requires a non-party to travel more than 100 miles to comply; (iii) compels disclosure of privileged matter; or (iv) subjects the respondent to an undue burden. Fed. R. Civ. P. 45(c)(3)(A)(i)-(iv).

Usually motions to quash are brought by the recipient of the subpoena. However, in certain cases, another party (or non-party) who believes it will be negatively impacted if the recipient provides responsive material can bring the motion to quash. Courts generally deny such motions under the rationale that the movant lacks standing to bring the motion. However, such motions are appropriate "if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982). As with the other issues before the

---

[5] Given the Court's holding on joinder, it does not reach the issue of whether it is proper for putative John Doe X to appear in this Court anonymously. Suffice it to say that John Doe X's "Motion to Sever and Dismiss All Does Other Than Doe No. 1" indicates that he is not John Doe #1 (Dkt. 36), and thus he will be severed from this action whether he is identified at this time or not. Presumably John Doe X will again be sued by Plaintiff, and he can move for leave to proceed anonymously at that time.

Court today, the Seventh Circuit has not yet had occasion to speak as to whether an internet subscriber has standing to challenge a subpoena issued to his or her ISP seeking identification information. The district courts are again of differing minds. *Compare Sunlust*, 2012 WL 3717768, at *2 (John Doe had standing to object to subpoena issued to ISP based upon his "privacy interest in the information requested"), *with Third Degree Films, Inc. v. Does 1-2010*, No. 4:11 MC 2, 2011 WL 4759283, at *2 (N.D. Ind. Oct. 6, 2011) (John Doe had no standing because subpoena directed to ISP rather than to him).

Here, the Court need not reach the issue because, even assuming that John Doe 29 had standing to challenge the subpoena to the ISP, John Doe 29 has failed to present any persuasive basis for quashing it. Although Defendant argues that his privacy rights would be violated if the ISP were to provide the information requested in the subpoena, internet subscribers do not have a protected right to privacy with respect to subscriber information. *See First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 247 (N.D. Ill. 2011) (Castillo, J.) (citing *Achte/Neunte Boll Kino Beteilgungs Gmbh & Co. v. Does 1-4, 577*, 736 F. Supp. 2d 212, 216 (D.D.C. 2010)). As the court explained in that case, "[b]ecause they have already shared their subscriber information with their ISPs in order to set up their Internet accounts, the Putative Defendants likewise have no reasonable expectation of privacy in the same information now sought in the subpoenas. This information is therefore not privileged" and the subpoenas should not be quashed. *Id.* at 247-48.

Nor can John Doe 29 claim that the subpoena subjects him to an undue burden pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iv) because, simply put, the subpoena does not bind him in any way. The only entity subject to the subpoena is the ISP itself, and the ISP is not challenging it. *Id.*; *see also Reynolds*, 2013 WL 870618, at *6. As a result, the Court denies John Doe 29's motion to quash.

**III.     John Doe 29's Motion To Proceed Anonymously**

In addition, John Doe 29 requests that, if the Court permits Plaintiff to obtain his identification information through the ISP, the Court allow him to proceed anonymously for the remainder of the action. Plaintiff in response indicates that it has no objection to John Doe 29 remaining anonymous "publicly" through the conclusion of discovery. (Dkt. 29 at 3.) However, Plaintiff does object to a blanket protective order precluding it from knowing John Doe 29's identity, arguing that it would be hampered in conducting discovery without that information. (*Id.* at 3-4.) Regardless of Plaintiff's position, the Court has an independent duty to determine whether it is appropriate for the Defendant to proceed anonymously. *Doe v. City of Chi.*, 360 F.3d 667, 669 (7th Cir. 2004).

As a general matter, motions to proceed anonymously are disfavored. Defendant correctly argues that courts often permit parties to do so where the case involves "matters of a sensitive and highly personal nature such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families." *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979). But, although being accused of illegally-downloading pornographic material may be embarrassing in polite society, such allegations do not constitute a "matter[] of a sensitive and highly personal nature" rising to the level of the examples enumerated in the *Southern Methodist* case. And, as other district courts have noted, categorically allowing such relief would favor the rights of accused copyright infringers over those of the owners of the infringed copyrights, whatever the societal value of the works may be. *See*, *e.g.*, *Malibu Media, LLC v. John Does 1-14*, No. 12-cv-263, 2012 WL 6019259, at *8 (N.D. Ind. Dec. 3, 2012); *Patrick Collins, Inc. v. John Does 1-9*, No. 12-cv-3161, 2012 WL 4321718, at *5 (C.D. Ill. Sept. 18, 2012).

On the other hand, there is a growing concern that the IP addresses identified by plaintiffs in BitTorrent cases may not belong to the actual individual who performed the illegal downloading. *See*, *e.g.*, *Reynolds*, 2013 WL 870618, at *7 (citing *Digital Sin v. Does 1-176,* 279 F.R.D. 239, 242 (S.D.N.Y. 2012) and *In re BitTorrent,* 2012 WL 1570765, at *3); *see also* Peggy E. Chaudhry, *Curbing Consumer Complicity for Counterfeits in a Digital Environment*, 7 J. Bus. & Tech. L. 23, 26 n.25 (2012) ("An IP address can give law enforcement incomplete or misleading information regarding who is responsible for illegal activity.") (citing Marcia Hofmann, *Why IP Addresses Alone Don't Identify Criminals*, Elec. Frontier Found. (Aug. 24, 2011), https://www.eff.org/deeplinks/2011/08/why-ip-addresses-alone-dont-identify-criminals)). Furthermore, the Court is mindful that the motion was brought by the Defendant, who was forced before the Court against his will, rather than Plaintiff, who "purposefully availed" itself of the protections of the Court. *See id.* (citing *Sunlust Pictures*, 2012 WL 3717768, at *6).

Finally, the Court notes that Plaintiff does not object to Defendant's motion. Taking all of these factors into account, the Court grants John Doe 29's motion to proceed anonymously by pseudonym either through the close of fact discovery or until further order of the Court.[6]

---

[6] The Court does not interpret John Doe 29's motion as seeking to withhold his identity from the Plaintiff, as Malibu Media feared, and the Court will not order that such a blanket protective order be put in place. *See Reynolds*, 2013 WL 870618, at *7 ("Malibu Media will not be unfairly prejudiced because it will know Doe 15's true identity and will be able to investigate whether its claims have merit."). The Court's holding is simply that John Doe 29 may file documents with the Court pseudonymously for the time being, and Plaintiff must continue referring to the Defendants as "John Doe 29" until further order of the Court.

**Conclusion**

For the reasons set forth above, the Court orders as follows:

**As to Case No. 12-cv-6675:**

1. John Does 2-68 are hereby severed from the action to the extent they have not been voluntarily dismissed by Plaintiff. Only John Doe 1 remains as a Defendant. Plaintiff may file separate amended complaints containing only its claims against each individual defendant.

2. The motion by Defendant "John Doe X" to sever [36] is granted but the motion to quash [37] is denied as moot; and

3. Plaintiff's motion to compel "John Doe X's" attorney to disclose representation [53] is denied as moot.

**As to Case No. 12-cv-6677:**

1. The motions by Defendant John Doe 38 to quash; for leave to proceed anonymously; and to sever [18] are granted as to severance, but the remaining motions are denied as moot; and

2. The motions by Defendant John Doe 29 to quash; for leave to proceed anonymously; and to sever [20, 22] are granted in part and denied in part. John Doe 29 remains in the case as the lowest-numbered remaining defendant. John Doe 29 may proceed via a pseudonym, and any publicly-filed documents referencing John Doe 29 should refer to him by his "John Doe" identifier rather than his real name either through the close of fact discovery or until further order of the Court. John Doe 29's motion to quash is denied.

SO ORDERED                          ENTER: 9/27/13

                                                   **JOHN Z. LEE**
                                                   **U.S. District Judge**